NOT FOR PUBLICATION                        (Docket Entry No. 2)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____   :
                                   :
                                   :   Civil No. 05-226 (RBK)
                                   :
In the matter of                   :   **OPINION**
EAST WEST TRADE PARTNERS, INC.,:
                                   :
          Debtor,                  :
                                   :
_____   :

**KUGLER**, United States District Judge:

        This matter comes before the Court on appeal by Sobel
WP, L.L.C., from Orders by the United States Bankruptcy Court for
the District of New Jersey denying Appellant's motion for return
of its deposit and motion for reconsideration. For the reasons
set forth below, the Bankruptcy Court's decision is affirmed.

I.        **Background**

        In December 2000, Appellant Sobel WP, L.L.C., ("Sobel")
and East West Trade Partners, Inc., ("East-West") negotiated an
Agreement of Sale ("the Agreement") providing for Sobel to
purchase a tract of undeveloped property in Philadelphia,
Pennsylvania from East-West for $3,800,000.00. Prior to the
Agreement at issue, East-West and entities associated with Sobel
had twice entered into agreements of sale, the first in October

1

1996 and the second in October 1997. In both instances, the deal was never completed because the buyer was unable to find a tenant.

In January 2001, East-West and Sobel signed the Agreement presently before the Court; East-West signed the Agreement on January 5, 2001 and Sobel signed on January 23, making January 23 the Agreement's Effective Date. The Agreement provided for a due diligence period, which was to expire thirty days after the later of the Effective Date or the date East-West delivered copies of required due diligence documents. The closing date was set for 180 days after the expiration of the due diligence period. Under this calculation, the earliest possible closing date fell on August 21, 2001.[1] The Agreement also granted Sobel the right to extend the closing date for three additional successive periods of 180 days, provided that Sobel paid a deposit for the second and third extension.

Per the Agreement, Sobel tendered a $50,000.00 deposit to be put in escrow. In the event of a breach by either party, the escrow company was to convey the deposit to the nonbreaching party. This deposit is the subject of the present appeal.

The Agreement also required East-West to provide copies of due diligence documents within ten business days following the

---

[1] This assumes the due diligence period ended February 24, 2001, thirty days after the Effective Date of January 23. The 180 day period then expired on August 21.

2

Effective Date.[2] It is uncontested that East-West provided no such documents after the Effective Date. However, East-West did send Sobel a letter on February 16, 2001 notifying Sobel that all relevant documents had been provided prior to the Effective Date and that no new documents existed. Whether Sobel actually received this notification appears to be in dispute. However, it is clear that Sobel did not contact East-West about documents until a letter written by Sobel's counsel to East-West on August 10, 2001, notifying East-West that no title documents had yet been received and requesting copies.

On August 16, 2001, East-West's counsel wrote to the escrow company, stating that "the Buyer has not performed" and requesting the $50,000.00 deposit.[3] Although, the Agreement

---

[2] The Agreement also contained a provision regarding Sobel's obligation to diligently pursue the necessary permits and Sobel's rights under the Agreement, should such permits be refused or revoked. While it is uncontested that Sobel has not pursued any permits, there appears to be considerable contention surrounding Sobel's obligation to obtain these permits and whether its failure to pursue permits was a breach of the Agreement or merely constituted evidence that Sobel would have been unable to close by the closing deadline. For the purposes of this appeal, this Court will assume that Sobel's failure to obtain permits was not a breach of Sobel's obligations under the agreement.

[3] The August 16 letter reads in full:
> Please be advised that I represent the Seller with regard to the above transaction. It was my understanding that you are holding in escrow in the amount of $50,000.00 in an interest-bearing account. It is also my understanding after speaking to George Diemer that the Buyer has not performed and the Seller is entitled to retain and receive the escrowed proceeds. Please accept this letter as our request that

required East-West to provide notice and a five day cure period
to Sobel in the event of a default, East-West contacted the
escrow company directly and did not adhere to the Agreement's
notice requirement.

Sobel's counsel responded by letter on August 21, 2001,
informing East-West that Sobel did not believe it was in default
and that it considered the agreement in full force and effect. On
October 17, 2001, Sobel filed suit against East-West in the
United States District Court for the Eastern District of
Pennsylvania, seeking specific performance of the Agreement. On
June 27, 2003, East-West filed a Chapter 11 petition in the
Bankruptcy Court, staying the District Court case.

Sobel filed an initial motion for return of its deposit
in Bankruptcy Court on August 6, 2004. The Honorable Gloria M.
Burns ruled that the deposit should be paid to East-West because
Sobel's failure to consummate settlement prior to the closing
date constituted a default of the Agreement. The Court found that
East-West's failure to provide a five day cure period was not a
material breach since Sobel was clearly unprepared to close by
the closing date and because, while Sobel had the ability to
extend the closing period as of August 16, it failed to do so.

The Court rejected Sobel's argument that because East-

_____

you forward same to my office.
Exhibit J.

West had never produced documents, the 180-day closing period had not yet begun to run. Instead, the Court found that Sobel's failure to request any documents prior to August 10 was a waiver of East-West's requirement to produce. Judge Burns also rejected Sobel's argument that East-West's August 16 letter constituted an anticipatory repudiation of the Agreement, which would have relieved Sobel of any further duties to perform.

On December 10, 2004, Judge Burns denied Sobel's motion for reconsideration of this order, holding that the motion for reconsideration presented no new facts or law that the Court did not have before it or which could have been brought before it in the original motion.

## II.      Jurisdiction and Standard of Review

This Court has appellate jurisdiction over a final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). Under Rule 8013 of the Federal Rules of Bankruptcy Procedure, a district court cannot set aside the factual determinations of a bankruptcy court unless they are "clearly erroneous." Fed. R. Bankr. P. 8013; In re Cellnet Data Systems, Inc., 327 F.3d 242, 244 (3d Cir. 2003). A factual finding is clearly erroneous only where "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

5

The Court reviews the Bankruptcy Court's legal conclusions *de novo* and applies a dual standard to mixed questions of law and fact. Id.; see also In re Brown, 951 F.2d 564, 567 (3d Cir. 1991) ("Mixed questions of law and fact must be divided into their respective components and the appropriate test applied."). An exercise of discretion by the bankruptcy court is conclusive unless it constitutes an abuse of discretion. See In re Vertientes, Ltd., 845 F.2d 57, 59 (3d Cir.1988).

## III.      Discussion

### A.        Anticipatory Repudiation

The Bankruptcy Court held that Sobel defaulted under the Agreement by neither closing nor exercising its right to an extension. Sobel's default would entitle East-West to the $50,000.00 deposit. Sobel disputes the finding of default, and argues that East-West's August 16 letter to the escrow company repudiated the Agreement, relieving Sobel of any obligation to perform.

Although Judge Burns found that the letter was not an anticipatory repudiation, repudiation of a contract is a question of law that this Court must review *de novo*. See St. Paul Fire & Marine Ins. Co. v. City of Green River, Wyo., 93 F. Supp. 2d 1170, 1175 (D. Wyo. 2000) ("Whether a party's actions constitute an anticipatory repudiation, like other issues of contract interpretation, is a question of law for the Court to decide");

6

see also <u>Nuco Plastics, Inc. v. Universal Plastics, Inc.</u>, 601
N.E.2d 152, 155 (Ohio Ct. App.1991).

Under Pennsylvania law,[4] anticipatory repudiation
occurs when one party communicates a definite and unconditional
refusal to perform to the other party. <u>McClelland v. New
Amsterdam Cas. Co.</u>, 185 A. 198, 200 (1936); Restatement (Second)
of Contracts § 250 (1981). Only "an absolute and unequivocal
refusal to perform or a distinct and positive statement of an
inability to do so" qualifies as an anticipatory repudiation.
<u>Edwards v. Wyatt</u>, 335 F.3d 261, 272-73 (3d Cir. 2003) (quoting
<u>2401 Pennsylvania Ave. Corp. v. Federation of Jewish Agencies</u>,
489 A.2d 733, 737 (1985)).

As the Third Circuit recently explained in overturning
a district court finding of anticipatory repudiation,
Pennsylvania has a particularly narrow interpretation of the
anticipatory repudiation standard and is reticent to find
repudiation unless the repudiating party makes his refusal to
perform absolutely clear. <u>Id.</u> at 272 n.8 ("The Pennsylvania
Supreme Court has emphasized that Pennsylvania contract law
imposes stricter requirements than does the Restatement for an
anticipatory repudiation defense."); <u>see also</u> <u>2401 Pennsylvania
Ave. Corp. v. Federation of Jewish Agencies</u>, 489 A.2d 733, 737
(1985) ("we reject any argument suggesting a dilution of our long

---

[4] Pennsylvania law controls here per the parties' Agreement.

7

recognized standard of an 'absolute and unequivocal refusal to perform.'").

Under this standard, it is clear that East-West's August 16 letter does not constitute a repudiation sufficient to relieve Sobel of its obligations under the Agreement. No reading of the letter suggests an absolute and unequivocal refusal to perform. Rather, the letter demonstrates East-West's belief that Sobel had defaulted under the Agreement and that East-West was therefore entitled to the deposit.[5] The fact that East-West was in error, since the closing date had not passed and therefore Sobel could not have defaulted at that time, does not render its request for the deposit a repudiation. There is no suggestion that East-West would have refused to perform, had East-West been made aware of its error and had Sobel wished to close or extend the closing date.

Consequently, this Court finds that East-West did not repudiate the Agreement, and Sobel remained bound to perform. Because Sobel failed to either close or extend the closing

---

[5] Sobel accuses East-West of attempting to cancel the Agreement in order to pursue a more lucrative sale of the property to another corporation. Regardless of the veracity of Sobel's allegations, East-West's motives are irrelevant here. The only question of relevance is whether East-West's letter could be objectively understood as a repudiation. See Restatement (Second) of Contracts § 250 cmt. b (1981) ( "[T]o constitute a repudiation, a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform").

period, Sobel is in default under the agreement and East-West is entitled to the $50,000.00 deposit.

**B.**          **Notice and Opportunity to Cure**

Sobel also argues that it could not have defaulted because East-West failed to provide Sobel with either notice of default or the requisite five-day opportunity to cure. Sobel's argument is without merit.

As the Bankruptcy Court observed, such notice and opportunity to cure would have been useless in light of Sobel's obvious inability to close within such a short amount of time. Consequently, East-West's failure to adhere to the notice and cure provision is not so material as to negate the reality of Sobel's breach, particularly since East-West's August 16th letter acted as notice that East-West considered Sobel in default. Sobel's failure to take action to close or request an extension in the period that transpired since the August 16 letter renders the lack of a five-day cure period immaterial.

Accordingly, this Court will affirm the Bankruptcy Court's Orders denying Sobel's motion for return of its deposit and motion for reconsideration.

The accompanying Order shall issue today.


Dated:  _9-12-05____   _____ /s/ Robert B. Kugler_____
                            ROBERT B. KUGLER
                            United States District Judge

9